UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
STEPHEN B. PENCE,                                    :

                           Plaintiff,          :

           -v.-                                          :


                                      :

GEE GROUP, INC. f/k/a GENERAL
EMPLOYMENT ENTERPRISES, INC.                         :

                       Defendant.          :
---------------------------------------------------------------X

16 Civ. 6589 (GBD) (GWG)

<u>MEMORANDUM OPINION</u>

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      In this lawsuit, plaintiff Stephen B. Pence has brought claims against defendant GEE

Group, Inc. ("GEE"), for which Pence formerly served as chairman, seeking indemnification for

attorney's fees and other expenses.  GEE has moved to dismiss under the doctrine of <u>forum</u> <u>non</u>

<u>conveniens</u>, or, in the alternative, to transfer the case to the Northern District of Illinois under 28

U.S.C. §§ 1404(a) or 1406(a).[1]  For the reasons stated below, the motion to transfer the case

pursuant to 28 U.S.C. § 1404(a) is granted.

---

    [1] <u>See</u> Notice of Motion, filed Oct. 28, 2016 (Docket # 30); Declaration of Michael P.
Regan in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint, or
Alternatively, to Transfer, filed Oct. 28, 2016 (Docket # 31); Declaration of Dennis W. Baker,
filed Oct. 28, 2016 (Docket # 32) ("Baker Decl."); Declaration of Alex P. Stuckey in Support of
Motion to Dismiss, filed Oct. 28, 2016 (Docket # 33) ("Stuckey Decl."); Memorandum of Law
in Support of Defendant GEE Group Inc.'s Motion to Dismiss the Amended Complaint or,
Alternatively, to Transfer, filed Oct. 28, 2016 (Docket # 34) ("Def. Mem."); Affidavit of Stephen
B. Pence in Opposition to Defendant GEE Group, Inc.'s Motions to Dismiss or Transfer, filed
Nov. 14, 2016 (Docket # 40) ("Pence Aff."); Memorandum of Law in Opposition to Defendant
GEE Group, Inc.'s Motions to to [sic] Dismiss or Transfer, filed Nov. 14, 2016 (Docket # 41)
("Pl. Mem."); Declaration of Michael P. Regan in Further Support of Defendant's Motions to
Dismiss, filed Dec. 2, 2016 (Docket # 42); Reply Memorandum of Law in Further Support of
Defendant GEE Group, Inc.'s Motions to Dismiss the Amended Complaint or, Alternatively, to
Transfer, filed Dec. 2, 2016 (Docket # 43) ("Def. Reply").

I. <u>BACKGROUND</u>

    A. <u>Pence's Connection to GEE</u>

    Pence is an attorney who has worked in private practice in Louisville, Kentucky since late 2007. Pence Aff. ¶¶ 2-3. During 2009, Pence worked for W. Anthony Huff and regularly traveled with Mr. Huff to New York City in connection with his work. <u>Id.</u> ¶ 4. During one of these trips, Pence met with representatives of GEE, including Dennis W. Baker, a former director of the company. <u>Id.</u> ¶¶ 5-6; Baker Decl. ¶ 8.

    GEE is a temporary staffing agency, providing "direct hire, contract, and contract-to-hire services." Stuckey Decl. ¶ 3. Although GEE is incorporated in Illinois, "senior management runs the company from Jacksonville, Florida and Tampa, Florida."[2] <u>Id.</u> ¶ 2. In 2009, GEE sought an outside investor, a role that Pence eventually filled by purchasing a majority of GEE's shares using a company he controlled called PSQ. Baker Decl. ¶¶ 7, 14-15; Pence Decl. ¶ 8. Pence was then elected as GEE's Chairman of the Board, serving from July 2009 to November 2010. Stuckey Decl. ¶ 7.

    B. <u>The Indemnification Agreement</u>

    As of June 30, 2009, GEE's bylaws provided that it would indemnify all of its directors and officers who are sued in connection with their positions at GEE. <u>See</u> By Laws of General Employment Enterprises, Inc., As Amended Effective June 30, 2009 (attached as Ex. A. to Stuckey Decl.) ("Bylaws") Art. VIII § 1. The Bylaws provide:

> The corporation shall, to the fullest extent to which it is empowered to do so by The Illinois Business Corporation Act of 1983 or any other applicable laws . . .

---

    [2] GEE considers Florida its "principal place of business" for jurisdictional purposes. <u>See</u> Memorandum of Law in Support of Defendant GEE Group, Inc.'s Motion to Dismiss the Amended Complaint Under Rule 12(b), filed Oct. 28, 2016 (Docket # 39) at 9.

> indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending[,] or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was a director or officer of the corporation . . . against all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding.

Id.  The Bylaws also declare that this provision is "a contract between the corporation and each director or officer who serves in any such capacity at any time while this article is in effect."  Id. Art. VIII § 2.

On July 9, 2009, Pence signed an Indemnity Agreement with GEE.  Pence Aff. ¶ 14; Minutes, dated July 9, 2009 (attached as Ex. B to Stuckey Decl.); Indemnity Agreement, dated July 9, 2009 (attached as Ex. 2 to Amended Complaint for Declaratory Relief and Damages, filed Oct. 14, 2016 (Docket # 25) ("Am. Compl.")) ("Indemnity").  Pence was attending a board meeting in Oakbrook Terrace, Illinois at the time.  Pence Aff. ¶ 14; Minutes.  The Indemnity states that GEE will "attempt" to maintain liability insurance for those serving it and its subsidiaries, and that although GEE's Charter and Bylaws and Illinois law provide for indemnification rights, these rights are "not exclusive."  See Indemnity at Recitals; accord id. ¶ 17(a) ("The rights of indemnification and to receive advancement of Expenses as provided by this Agreement shall not be deemed exclusive of any other rights to which Indemnitee may at any time be entitled under applicable law, the Charter, the Company's Bylaws, any agreement, a vote of stockholders or a resolution of directors, or otherwise.").  The Indemnity recites that "[Pence] does not regard the protection available under [GEE's] Charter, Bylaws, and insurance as adequate . . . and may not be willing to serve as an officer or director without adequate protection."  Id. at Recitals.  The Indemnity promises indemnification for Pence for expenses

3

incurred in legal proceedings in which he is "a party or participant."  Id. ¶¶ 3-6.  The Indemnity

also includes the following choice of law and forum selection clause:

> This Agreement and the legal relations among the parties shall be governed by,
> and construed and enforced in accordance with, the laws of the State of Illinois,
> without regard to its conflict of laws rules. . . .  [GEE] and [Pence] hereby
> irrevocably and unconditionally: (a) agree that any action or proceeding arising
> out of or in connection with this Agreement shall be brought only in an Illinois
> Court; (b) consent to submit to the jurisdiction of an Illinois Court for purposes of
> any action or proceeding arising out of or in connection with this Agreement; (c)
> waive any objection to the laying of venue of any such action or proceeding in an
> Illinois Court; and (d) waive, and agree not to plead or to make, any claim that
> any such action or proceeding brought in an Illinois Court has been brought in an
> improper or inconvenient forum, or is subject (in whole or in part) to a jury trial.

Id. ¶ 23.  The Indemnity defines "Illinois Court" as "the Circuit Court of the Eighteenth Judicial

District of the State of Illinois or another federal or state court of competent jurisdiction."  Id.

¶ 2(e).  Oakbrook Terrace, where the Indemnity was signed, is located in Dupage County.

Dupage County is in the Eighteenth Judicial Circuit.  See 705 Ill. Comp. Stat. 35/1.

### C.  Pence's Costs Incurred and Indemnity Requests

At some point thereafter, the United States Attorney's Office for the Southern District of

New York began a criminal investigation that resulted in the filing of a criminal complaint in

2010 against the president of a bank where GEE had an account.  Pence Decl. ¶ 17; Letter from

Gregory Bartko, Esq., dated Apr. 26, 2010 (attached as Ex. 3 to Am. Compl.) ("Bartko Letter").

In an April 26, 2010, letter from GEE's General Counsel to an insurer, GEE's General Counsel

stated that Pence incurred expenses during that investigation for which he claimed

indemnification.  See Bartko Letter.  That letter stated: "pursuant to GEE's Bylaws, as amended

November 19, 2007, GEE has an obligation under Article VII of those Bylaws to indemnify Mr.

Pence for the costs of his defense, including the advancement of attorneys' fees necessary to

engage counsel to represent him."  Id.  The letter was sent from Atlanta, Georgia, to Rolling

Meadows, Illinois, with a copy sent to Pence by email.  See id.  Pence's complaint alleges that he relied on the Bartko Letter when he hired counsel to represent him in connection with a criminal investigation.  Am. Compl. ¶ 70.  However, GEE has not indemnified Pence for any of these expenses.  Id. ¶ 71.

On September 9, 2015, the Securities and Exchange Commission ("SEC") filed a civil complaint against Pence.  See Complaint and Jury Demand, filed Sept. 9, 2015 (Docket # 1), in SEC v. Pence, No. 15 Civ. 07077 (GBD) (GWG) (S.D.N.Y.) ("SEC Compl.").  The complaint concerns some of Pence's actions during his service as chairman of GEE, and includes charges of fraudulent conduct in violation of Exchange Act § 10(b), 15 U.S.C. § 48j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and making materially false or misleading statements to an accountant in violation of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  SEC Compl. ¶¶ 70-71, 73-75.  Although Pence sought indemnification from GEE to defend these charges, Am Compl. ¶¶ 38-55; Pence Decl. ¶ 17, GEE refused to indemnify him or provide advancements of costs, Am. Compl. ¶ 55; Stuckey Decl. ¶ 11.

D.  Procedural History

Pence's original complaint in this action was filed on August 19, 2016.  It contained a claim seeking a declaratory judgment that GEE is legally obligated to indemnify Pence and a claim for damages resulting from GEE's alleged breach of the Indemnity.  See Complaint for Declaratory Relief and Damages, filed Aug. 19, 2016 (Docket # 1) ¶¶ 52-58.  GEE then filed a motion to dismiss the complaint, arguing that this Court lacked personal jurisdiction, that venue was improper, and that the complaint failed to state a claim.[3]  At the same time, it filed a separate

---

[3]  See Notice of Motion, filed Sept. 26, 2016 (Docket # 12); Declaration of Alex P. Stuckey in Support of Motion to Dismiss, filed Sept. 26, 2016 (Docket # 13); Declaration of

motion to dismiss the case pursuant to the forum non conveniens doctrine or, in the alternative,

for an order transferring the case to the Northern District of Illinois under 28 U.S.C. § 1404(a).[4]

In response, Pence filed an amended complaint.  See Am. Compl.  The claims in the amended

complaint consist of a claim for a declaratory judgment that Pence is entitled to be indemnified

under GEE's bylaws, id. ¶¶ 57-60; a breach of contract claim for breach of the Indemnity, id.

¶¶ 62-67; and a claim for promissory estoppel based on the Bartko Letter, id. ¶¶ 69-72.[5]  GEE

then filed the instant motion seeking dismissal or transfer of Pence's amended complaint.

## II.  DISCUSSION

GEE moves for transfer under 28 U.S.C. §§ 1404(a) or 1406(a) to the United States

District Court for the Northern District of Illinois, or, in the alternative, for dismissal or transfer

under the common law doctrine of forum non conveniens.

---

Michael P. Regan in Support of Defendant's Motion to Dismiss Plaintiff's Claim, filed Sept. 26, 2016 (Docket # 14); Memorandum of Law in Support of Defendant GEE Group, Inc.'s Motion to Dismiss the Complaint Under Rule 12(b), filed Sept. 26, 2016 (Docket # 15) ("Def. Dismiss Mem."); Supplemental Declaration of Alex P. Stuckey in Support of Motion to Dismiss, filed Oct. 11, 2016 (Docket # 24).  The motion to dismiss included an argument that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) based on the forum-selection clause.  See Def. Dismiss Mem. at 10-13.

[4]  See Notice of Motion, filed Sept. 26, 2016 (Docket # 16); Declaration of Michael P. Regan in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion to Transfer, filed Sept. 26, 2016 (Docket # 17); Memorandum of Law in Support of Defendant GEE Group, Inc.'s Motion to Dismiss the Complaint or, Alternatively, to Transfer, filed Sept. 26, 2016 (Docket # 18).

[5]  At a conference on October 17, 2016, two days after filing his amended complaint, Pence's counsel stated that he would not pursue claims under the Indemnity if this Court found the forum selection clause was mandatory.  See generally Pl. Mem. at 23 n.10.  Pence has since reconsidered that position and stated that he will not forgo enforcement of his rights under the Indemnity.  Id.  He also states that he intends to amend his complaint to add a claim for specific performance under section 20(e) of the Indemnity.  Id. at 23-24 n.10.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S. Ct. 568 (2013), the Supreme Court held that

> Section 1404(a) is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.

Id. at 580 (citations omitted).  Here, GEE seeks transfer to the United States District Court for the Northern District of Illinois, which is "within the federal court system."  See id.  Thus, Atlantic Marine mandates that we analyze GEE's application exclusively under 28 U.S.C. § 1404(a).

GEE contends that the forum non conveniens doctrine — rather than section 1404(a) — applies because the contract at issue permits suit to be brought either in federal court or in state court and, according to GEE, in such circumstances, the rule quoted above from Atlantic Marine does not apply.  Def. Mem. at 6.  To support this argument, GEE points to a passage from Atlantic Marine stating that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens."  134 S. Ct. at 580 (emphasis added).  We disagree with GEE's analysis.  Here, the forum selection clause does not require that suit be brought in a state forum; rather it requires that it be brought in either a state or federal forum.  See Indemnity ¶¶ 2(e), 23 (requiring suit in "the Circuit Court of the Eighteenth Judicial District of the State of Illinois or another federal or state court of competent jurisdiction.").  Whatever ambiguity might be discerned in Atlantic Marine's phrasing of its rule

7

is dispelled by the facts of <u>Atlantic Marine</u> itself.  The forum selection clause construed in

<u>Atlantic Marine</u>, like the clause at issue here, permitted suit to be brought either in state or

federal court.  <u>See</u> 134 S. Ct. at 575 ("[A]ll disputes between the parties shall be litigated in the

Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern

District of Virginia, Norfolk Division.") (citation and internal quotation marks omitted).

Nonetheless, <u>Atlantic Marine</u> analyzed the propriety of the transfer exclusively under 28 U.S.C.

§ 1404(a) rather than the common law doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  Other courts have

similarly applied section 1404(a) to situations where a forum selection clause allows suit to be

brought in either a federal or state court, and where, as here, the party seeks a transfer to a

federal court.  <u>See</u>, <u>e.g.</u>, <u>Food Mktg. Merch., Inc. v. Cal. Milk Processor Bd.</u>, 2015 WL 3893508,

at *1, *3 (S.D.N.Y. May 7, 2015); <u>Bny Mellon, N.A. v. Lyell Wealth Mgmt., LLC</u>, 2016 WL

7377235, at *2-3 (S.D.N.Y. Dec. 8, 2016).  Accordingly, we analyze GEE's motion only under

section 1404(a) and not under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.

    A.  <u>Law Governing Motions to Transfer to Another Judicial District Under § 1404(a)</u>

    In deciding whether to transfer a case from one judicial district to another, a court first

examines whether the case could have been brought in the other district.  <u>See</u>, <u>e.g.</u>, <u>ICICI Bank</u>

<u>Ltd. v. Essar Glob. Fund Ltd.</u>, 2017 WL 122994, at *6 (S.D.N.Y. Jan. 12, 2017); <u>Herbert Ltd.</u>

<u>P'ship v. Elec. Arts Inc.</u>, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004); <u>In re Nematron Corp. Sec.</u>

<u>Litig.</u>, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).  Pence does not contest that this case could

have been brought in the Northern District of Illinois.  Thus, we do not discuss this question

further.

    If the case could have been brought in the other district, a court then examines a number

of factors, commonly referred to as "private" and "public-interest" factors.  <u>Id.</u>  The Second

Circuit has listed the following factors as appropriate for consideration in determining whether to grant a motion to transfer venue:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (citation and internal quotation marks omitted).  Courts in this district have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice . . . ."  Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011); accord Tlapanco v. Elges, 2016 WL 4992590, at *3 (S.D.N.Y. Sept. 15, 2016); AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009).  "There is no rigid formula for balancing these factors and no single one of them is determinative.  Instead, weighing the balance is essentially an equitable task left to the Court's discretion."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause."  Atlantic Marine, 134 S. Ct. at 581.  Because "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," id. (alteration in original) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33 (1988)), the Supreme Court has altered the usual section 1404(a) analysis for this situation in three ways:

> First, the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .

Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .  As a consequence, a district court may consider arguments about public-interest factors only. . . .

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations.

Id. at 581-82 (emphasis added) (citations omitted); accord Bent v. Zounds Hearing Franchising, LLC, 2015 WL 7721838, at *3 (S.D.N.Y. Nov. 30, 2015).

Because the section 1404(a) analysis is substantially different if a forum selection clause applies, we turn next to the question of whether any of Pence's claims are governed by the forum selection clause contained in the Indemnity.

### B.  Forum Selection Clause

As to whether a forum selection clause applies, the Second Circuit has held that a forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was "reasonably communicated to the party resisting enforcement"; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims.  See Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007).  If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid."  Martinez v. Bloomberg LP, 740 F.3d 211, 221 (2d Cir. 2014) (quoting Phillips, 494 F.3d at 383-84).

Pence does not contest that the clause was reasonably communicated to him — nor could he given that it was contained in a contract he signed and, he was sufficiently sophisticated to understand it.  As for whether the clause encompasses any of the claims in this lawsuit, Pence similarly does not contest that his claim for breach of the Indemnity agreement, Am. Compl. ¶¶ 62-67, would be subject to the forum selection clause if it were enforced.

We thus examine next whether the Indemnity's forum selection clause is mandatory.  We apply Illinois law in interpreting the Indemnity because the Second Circuit has held that the law specified in the parties' agreement containing a forum selection clause governs the interpretation (as opposed to the enforcement) of the forum selection clause.  See Martinez, 740 F.3d at 217-18.  Here, the Indemnity expressly states that "[t]his Agreement and the legal relations among the parties shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without regard to its conflict of laws rules."  Indemnity ¶ 23.

Under Illinois law, "an indemnity agreement is a contract and is subject to contract interpretation rules."  Va. Sur. Co. v. N. Ins. Co. of N.Y., 866 N.E.2d 149, 153 (Ill. 2007) (citing Mountbatten Sur. Co. v. Szabo Contracting, Inc., 812 N.E.2d 90, 100 (Ill. 2004)).  "The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language.  If the contract language is unambiguous, it should be given its plain and ordinary meaning."  Id. (citing Cent. Ill. Light Co. v. Home Ins. Co., 821 N.E.2d 206, 213 (Ill. 2004)).  The parties' intent is not determined, however, by viewing a clause or provision of the contract in isolation, or by looking at detached portions.  Thompson v. Gordon, 948 N.E.2d 39, 47 (Ill. 2011) (citing Gallagher v. Lenart, 874 N.E.2d 43, 58 (2007)).  Rather, the contract "must be construed as a whole, viewing particular terms or provisions in the context of the entire agreement."  Matthews

11

v. Chi. Transit Auth., 51 N.E.3d 753, 776 (Ill. 2016) (citations omitted).  If the language of the contract is susceptible to more than one meaning, a court may consider extrinsic evidence to determine the parties' intent.  Thompson, 948 N.E.2d at 47 (citing Gallagher, 874 N.E.2d at 58).

Read by itself, paragraph 23 is clearly a mandatory forum selection clause inasmuch as it states that "any action or proceeding arising out of or in connection with [the Indemnity] shall be brought only in an Illinois Court."  Indemnity ¶ 23 (emphasis added); see, e.g., Schwarz v. Sellers Mkts., Inc., 812 F. Supp. 2d 932, 936 (N.D. Ill. 2011) ("A forum selection clause is mandatory where its 'language is obligatory' and 'clearly manifests an intent to make venue compulsory and exclusive.'") (quoting Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 756 (7th Cir. 1992)).  Indeed, Pence does not contest that this clause is a mandatory forum selection clause.  The dispute arises because the Indemnity, in a separate paragraph, defines "Illinois Court" as "the Circuit Court of the Eighteenth Judicial District of the State of Illinois or another federal or state court of competent jurisdiction."  Indemnity ¶ 2(e) (emphasis added).  Pence argues that this language means that suit may be brought in another federal or state court of competent jurisdiction anywhere in the United States.  Pl. Mem. at 18-19.  GEE argues that it means suit may be brought only in another federal or state court of competent jurisdiction in Illinois.  Def. Mem. at 10-12.

We agree with GEE that the Indemnity can only rationally be read to require suit in a federal or state court located in Illinois.  The phrasing of paragraph 23 — which contains the actual forum selection clause — reflects an unambiguous intention to limit suit to an "Illinois Court."  The intent of that paragraph would be destroyed were we to interpret the term "Illinois Court" to mean a court anywhere in the United States.  Such a conclusion could only be characterized as "absurd" — a result that must be avoided.  Suburban Auto Rebuilders, Inc. v.

Associated Tile Dealers Warehouse, Inc., 902 N.E.2d 1178, 1190 (Ill. 2009) ("Courts will construe a contract reasonably to avoid absurd results.") (citation omitted).  It would also violate the principle that "[a] contract must be interpreted as a whole.  Sentences are not isolated units of meaning, but take meaning from other sentences in the same document."  Quality Oil, Inc. v. Kelley Partners, Inc., 657 F.3d 609, 613-14 (7th Cir. 2011) (citation and internal punctuation omitted) (construing Illinois law).  Thus, beyond the absurdity of defining an "Illinois Court" to mean a non-Illinois court, our interpretation preserves the intention reflected in the mandatory language of the forum selection clause: that is, that "any action . . . shall be brought only in an Illinois Court."  If we were to follow Pence's reading, the parties' plain intention as reflected in paragraph 23 to limit their selection of forum would be eliminated.  See Thompson, 948 N.E.2d at 47 (under Illinois law, "primary objective" of contract interpretation "is to give effect to the intention of the parties") (citation omitted).

Pence urges that the phrase "another federal or state court of competent jurisdiction" has "no geographic limitation" and thus that the Court should not "add" one.  Pl. Mem. at 18.  But Pence does not explain how we could interpret the phrase as containing no geographic limitation and maintain fidelity to the parties' intention as expressed in paragraph 23, which contains the operative language.  In fact, to accept Pence's interpretation would make clause "(a)" of paragraph 23 meaningless and unnecessary, and would violate the canon of interpretation that a contract should be construed to give effect to all its provisions.  See Martindell v. Lake Shore Nat'l Bank, 154 N.E.2d 683, 689 (Ill. 1958) (a contract "is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose") (citation omitted); accord Bruno Benedetti & Sons, Inc. v. O'Malley, 464 N.E.2d 292, 297 (Ill. App. Ct. 1984).

13

This reading of the Indemnity becomes all the more obvious if we imagine that paragraph 23 had been written as follows: "'Illinois Court' shall mean any federal or state court of competent jurisdiction."  Had the provision been so drafted, it would be beyond dispute that the parties did not intend to define "Illinois Court" to refer to any federal or state court in the United States but rather were referring to any federal or state court in Illinois.  This reading would be correct because we can imagine that the drafters of the definition might have reasonably assumed that it was not necessary to repeat the limiting phrase "in Illinois," given that the provision was itself a definition of "Illinois Court."  With this in mind, we do not see why the naming of a specific court in Illinois in the definition — that is, "the Circuit Court of the Eighteenth Judicial District of the State of Illinois"— should change the analysis.  Thus, the drafters of paragraph 2(e) could have reasonably concluded that an additional limiting phrase, such as "in Illinois," was unnecessary.

Pence urges that if we find the phrase "another federal or state court of competent jurisdiction" to be ambiguous, we should construe the term against GEE because it was the contract's drafter.  Pl. Mem. at 21.  We accept that "any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision."  Dowd & Dowd, Ltd. v. Gleason, 693 N.E.2d 358, 368 (Ill. 1998) (citation omitted).  However, this rule only applies when there is an ambiguity.  See id; Covinsky v. Hannah Marine Corp., 903 N.E.2d 422, 427 (Ill. App. Ct. 2009) (citations omitted).  Here, there is no reasonable interpretation of paragraph 2(e) that would expand the definition of an "Illinois Court" to a court outside of Illinois.

Accordingly, we conclude that the forum selection clause is mandatory.  Pence has not made a showing that enforcement of the clause is "unreasonable or unjust, or that the clause was invalid."  Martinez, 740 F.3d at 217 (citation omitted).  We thus turn next to an analysis of the

14

motion to transfer the Indemnity claim under section 1404(a).

     C.   <u>Section 1404(a) Analysis of the Indemnity Claim</u>

As discussed above, if the forum selection clause is mandatory, the plaintiff's choice of forum carries no weight in the section 1404(a) analysis and a court does not consider private interests. <u>Atlantic Marine</u>, 134 S. Ct. at 581-82. The factors the Supreme Court identified as non-private, or "public," consist of "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u> at 581 n.6 (alteration in original) (citation and internal quotation marks omitted). The party acting in violation of the forum-selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." <u>Id.</u> at 583.

Pence recognizes that, in the event the forum selection clause is found to be mandatory as to the Indemnity claim, we must not consider any "private" factors. Pl. Mem. at 22. Yet his only argument that the Indemnity claim should not be transferred relies exclusively on his argument that hearing the case in Illinois would "create inconvenience to Mr. Pence" — a matter that cannot be considered under <u>Atlantic Marine</u> — and that the transfer would "needlessly waste judicial resources" because his claims for indemnification on a theory of promissory estoppel and under the Bylaws would remain in New York. <u>Id.</u> at 23. This latter argument, however, assumes that these other two claims must remain in New York. Pence never explains why they must remain in New York. And, as discussed in the next section, these claims are transferrable under section 1404(a).

Thus, Pence has not met his burden of showing that the public-interest factors "overwhelmingly disfavor a transfer." <u>Atlantic Marine</u>, 134 S. Ct. at 583. Accordingly, the

claim under the Indemnity must be transferred to United States District Court for the Northern

District of Illinois.

    D.  <u>Section 1404(a) Analysis of the Claim Under the Bylaws and for<br>        Promissory Estoppel</u>

      GEE argues that the remaining claims — under the Bylaws and for promissory estoppel

— are governed by the broad language of the forum selection clause.  <u>See</u> Indemnity ¶ 23 ("any

action or proceeding <u>arising out of or in connection with</u> this Agreement shall be brought only in

an Illinois Court") (emphasis added).  Pence disputes this reading of the forum selection clause.

<u>See</u> Pl. Mem. at 24-26.  We do not address GEE's argument, however, because even if Pence is

correct, these claims must still be transferred under section 1404(a).

      Because we assume <u>arguendo</u> that the forum selection clause does not apply to these

claims, we examine all the section 1404(a) factors — both public and private.

      1.  <u>Trial Efficiency and the Interest of Justice</u>

      Concerns of trial efficiency and the interest of justice weigh overwhelmingly in favor of

transfer because the Indemnity claim must be transferred as a result of the forum selection

clause.  The Bylaws and promissory estoppel claims rely on essentially the same facts as the

claim under the Indemnity.  <u>See</u> Am. Compl. ¶¶ 56, 61, 68.  All three of the claims seek the same

relief: that is, advancement or reimbursement of Pence's attorney's fees and other expenses for

some or all of the proceedings he has been sued in (or a declaration that he is entitled to

reimbursement).  <u>See id.</u> ¶¶ 60, 62, 71.  It would be wasteful in the extreme if discovery and trial

of these matters were to be duplicated in two different districts.[6]  Courts have routinely

_____

      [6]  In addressing the question of whether the forum selection clause should be applied at
all, Pence argued that the case brought against him in New York by the SEC and the instant case
involve similar facts.  <u>See</u> Pl. Mem. at 23-24.  We reject this argument.  The SEC case involves

recognized this principle in granting transfers under section 1404 where related claims were already proceeding in another district or had to be transferred to another district pursuant a forum selection clause.  See, e.g., Bent v. Zounds Hearing Franchising, LLC, 2016 WL 153092, at *6 (S.D.N.Y. Jan. 12, 2016); McCusker v. hibu PLC, 2015 WL 1600066, at *5 (E.D. Pa. Apr. 8, 2015); APA Excelsior III L.P. v. Premiere Techs., Inc., 49 F. Supp. 2d 664, 673 (S.D.N.Y. 1999); Pendleton Enters. v. Iams Co., 851 F. Supp. 1503, 1506 (D. Utah 1994); Savin v. CSX Corp., 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987).  Thus, this factor weighs heavily in favor of transfer.

### 2.  Locus of Operative Facts

In contract cases, the locus of operative facts examines "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 842 (S.D.N.Y. 2012) (citation and internal quotation marks omitted); accord Royal & Sun All. Ins. v. Nippon Express USA, Inc., 2016 WL 4523885, at *5 (S.D.N.Y. Aug. 18, 2016).  If, however, "the main cause of action raised in the complaint was a breach of contract action arising from the defendant's [performance of the contract]," then "the locus of operative facts [is] where the contract was performed, not where it was proposed and negotiated."  Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (citation omitted).  "Although choice of law analysis must conclude that one particular jurisdiction's law applies, venue analysis may determine that there are several loci of

---

allegations that Pence violated securities laws; it makes no mention of arrangements between GEE and Pence regarding indemnification.  Pence does not identify any issues that will be litigated in the SEC case that will also be litigated in the instant case.

operative facts." <u>Adams v. Key Tronic Corp.</u>, 1997 WL 1864, at *4 n.1 (S.D.N.Y. Jan. 2, 1997) (citation omitted).

Here, the causes of action center on the failure of GEE to advance or pay money to Pence to cover his attorney's fees and expenses — not the negotiation of the contract or the creation of the Bylaws. The Court views the causes of action under the Bylaws as having several loci of operative facts. The decision not to indemnify Pence, according to GEE's Chief Operating Officer and President, was made "principally in Florida." Stuckey Decl. ¶¶ 1, 11. The source of the potential reimbursement is GEE, whose offices are located in Florida. <u>Id.</u> ¶ 2. The benefit of the payment inures to Pence, who is located in Kentucky. Am. Compl. ¶ 2. The attorneys who generated or are generating the expenses allegedly subject to reimbursement are located in New York. <u>See</u> Bartko Letter; Answer to Complaint and Defenses, filed Feb. 4, 2016 (Docket # 16), in <u>SEC v. Pence</u>, No. 15 Civ. 07077 (GBD) (GWG) (S.D.N.Y.), at 16 (listing Pence's defense counsel's address as New York, New York).

The claim for promissory estoppel has little connection to New York inasmuch as the Bartko Letter was sent from Atlanta, Georgia, to Rolling Meadows, Illinois, copying Pence (who lives in Kentucky) via email. <u>See</u> Bartko Letter.

Given the fact that New York is at best one of several loci of operative facts, this factor provides little reason to deny transfer.

18

      3.  <u>Forum's Familiarity with the Governing Law</u>[7]

Pence has not argued that New York law applies to his claims under the Bylaws or for promissory estoppel.  The Bylaws will presumably be construed in accordance with Illinois law, given that they emanate from an Illinois company and their indemnification article refers to indemnification occurring "to the fullest extent to which [GEE] is empowered to do so by The Illinois Business Corporation Act of 1983."  Bylaws Art. VIII § 1.  A federal court in Illinois will be more familiar with the governing law and thus this factor favors transfer.

      4.  <u>Plaintiff's Choice of Forum</u>

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant.  Where the factors are equally balanced, the plaintiff is entitled to its choice."  <u>Berman v. Informix Corp.</u>, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citations omitted); <u>accord</u> <u>In re Warrick</u>, 70 F.3d 736, 740-41 (2d Cir. 1995) (per curiam) ("[Plaintiff's] choice of venue [is] entitled to substantial consideration.") (citation and internal quotation marks omitted).  However, "plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred."  <u>Dwyer v. Gen. Motors Corp.</u>, 853 F. Supp. 690, 694 (S.D.N.Y. 1994) (citation omitted); <u>accord</u> <u>Emp'rs Ins. of Wausau v. News Corp.</u>, 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008) ("[W]here the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case,

---

    [7]  The Court notes that this factor is generally given little weight, as "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits."  <u>Freeplay Music, LLC v. Gibson Brands, Inc.</u>, 2016 WL 4097804, at *5 (S.D.N.Y. July 18, 2016) (internal quotation marks omitted) (quoting <u>Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.</u>, 2006 WL 1517594, at *4 (S.D.N.Y. May 31, 2006)); <u>accord</u> <u>Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.</u>, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).

this choice is given considerably less weight.") (citations omitted). Here, Pence resides in Kentucky, not the Southern District of New York. As already discussed, the loci of operative facts in this case include several places other than New York. Therefore, this factor does not weigh in favor of denying transfer.

### 5. Convenience of the Parties and Non-Party Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (internal quotation marks omitted) (quoting Cento Grp., S.P.A. v. OroAmerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)); accord AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011); Seltzer v. Omni Hotels, 2010 WL 3910597, at *2 (S.D.N.Y. Sept. 30, 2010); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991). The convenience of witnesses, in particular, is often cited as the most important factor. See, e.g., Tlapanco, 2016 WL 4992590, at *4; SEC v. Comm. on Ways & Means of the U.S. House of Representatives, 161 F. Supp. 3d 199, 227 (S.D.N.Y. 2015); Larew v. Larew, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012). "In evaluating this factor, the court should 'look beyond the quantity of witnesses and assess the quality of the testimony to be offered.'" DealTime.com Ltd. v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting Am. All. Ins. Co. v. Sunbeam Corp., 1999 WL 38183, at *6 (S.D.N.Y. Jan. 28, 1999)). Accordingly, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978) (citations omitted), overruled on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 585-86 (2d Cir. 1990); accord Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014). Nevertheless, "a specific showing is required only when the movant seeks a

transfer <u>solely</u> 'on account of the convenience of witnesses.' . . . [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." <u>Connors v. Lexington Ins. Co.</u>, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original) (quoting <u>Factors Etc.</u>, 579 F.2d at 218); <u>accord</u> <u>Larew</u>, 2012 WL 87616, at *4.

Because neither GEE nor Pence has listed what witnesses it will seek to call at trial, let alone their locations, the Court is unable to analyze the issue of convenience for the witnesses. As for convenience to the parties, however, the factor weighs somewhat in favor of transfer. The Northern District of Illinois is seemingly convenient for GEE, as it holds meetings there. <u>See</u> Bylaws Art. II § 3 (naming the corporation's registered office in Illinois as the default location for annual meetings); Stuckey Decl. ¶ 9 (noting that July 9, 2009, Board of Directors meeting took place in Illinois). Pence is not located in the Southern District of New York, which means either district would offer equal inconvenience for him.[8] <u>See, e.g.</u>, <u>GE Capital Franchise Fin. Corp. v. Cosentino</u>, 2009 WL 1812821, at *4 (W.D.N.Y. June 25, 2009) ("[T]ransfer would not shift Defendant's inconvenience to Plaintiff, nor would it substantially add to Plaintiff's inconvenience, because Plaintiff, an Arizona-based corporation, would have to travel regardless of the venue."). Accordingly, the convenience of the parties favors transfer.

### 6. <u>Location of Relevant Documents and Ease of Access to Sources of Proof</u>

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. Furthermore, the location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would

---

[8] We note that the courthouse for the Eastern Division of the Northern District of Illinois in Chicago is approximately 300 miles from Jefferson County, Kentucky, where Pence lives and practices law. The Southern District of New York is approximately 750 miles from Jefferson County.

incur absent transfer."  <u>Larew</u>, 2012 WL 87616, at *5 (alteration in original) (internal quotation

marks omitted) (quoting <u>Seltzer</u>, 2010 WL 3910597, at *4); <u>accord</u> <u>Tlapanco</u>, 2016 WL

4992590, at *5 ("The location of relevant documents and the ease of access to sources of proof is

mostly a neutral factor, in light of the technological age in which we live, where there is

widespread use of, among other things, electronic document production.") (citation and internal

quotation marks omitted).  Accordingly, the Court considers this factor neutral.

7.  <u>Availability of Process to Compel Attendance of Unwilling Witnesses</u>

Pursuant to Federal Rule of Civil Procedure 45(c)(1)(A), a court generally cannot issue a

subpoena that would compel a non-party witness to travel more than 100 miles or out of state.

Neither party has listed witnesses, let alone any non-party witnesses, who may need to be

subpoenaed.  Thus this factor does not affect our analysis.  <u>Tlapanco</u>, 2016 WL 4992590, at *6

(citing <u>EasyWeb Innovations, LLC v. Facebook, Inc.</u>, 888 F. Supp. 2d 342, 354 (E.D.N.Y.

2012)).

8.  <u>Relative Means of the Parties</u>

Neither party has suggested that this factor has any bearing on the analysis.

9.  <u>Summary</u>

While a few factors counsel slightly against transfer, most of the factors are either neutral

or strongly favor transfer.  More importantly, it would be extremely wasteful to litigate nearly

identical claims in two separate fora.  The question of efficiency so obviously dictates a transfer

in this matter that we conclude that the two remaining claims must also be transferred pursuant

to 28 U.S.C. § 1404(a).

III. CONCLUSION

For the reasons stated above, the defendants have made a meritorious motion to transfer

this case in its entirety. The Court will delay issuing the order of transfer, however, until after

March 2, 2017, to allow plaintiff to seek a stay in the event he seeks review of this Opinion and

Order pursuant to Federal Rule of Civil Procedure 72(a) and chooses to make a motion for a stay

pending that review.[9] In the absence of an order granting such a stay, however, the Court will

direct the Clerk, by separate order issued after March 2, 2017, to effectuate the transfer.

Dated: February 16, 2017
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[9] Any motion for a stay should be made in the first instance to the undersigned. The
Court's pre-motion conference requirement is waived for such a motion.

23